IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

BRIAN A. WILKINS,

        **Plaintiff,**

vs.

RCI, LLC.,

        **Defendant.**

CASE NO:

TRIAL BY JURY DEMANDED

FILED 2023 MAY -8 PM 4:27 US DISTRICT COURT MIDDLE DISTRICT OF FL. ORLANDO FLORIDA

**COMPLAINT FOR VIOLATIONS OF, *INTER ALIA*, THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S. CODE § 227 ET SEQ.)**

1. "[Telemarketing calls are] the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30821 (1991).

2. The foregoing are the words of Ernest "Fritz" Hollings, the former U.S. Senator from South Carolina and sponsor of the Telephone Consumer Protection Act ("TCPA") of 1991. The Plaintiff in the instant case was forced to change his phone number on or around March 1, 2023 because he was constantly bombarded by telemarketing calls where, even if he

answered the calls, a robot was on the other end telling you "Press 1" for "blah, blah, blah; Press 2 for...," etc.

3. The new phone number was immediately placed on the National Do Not Call Registry. For the next several days, only the Plaintiff's friends and family called and texted. It was a breath of fresh air and much needed relief from the anxiety-inducing sight and sound of some random phone number showing up on caller ID. That all changed on March 8, 2023 when the Plaintiff received the first of 40 unsolicited robocalls from Defendant RCI, LLC. In a 34-day span.

4. Now the Plaintiff seeks redress for the brazen, unlawful conduct by the Defendant.

## JURISDICTIONAL STATEMENT

5. This Court's original jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332. The Court's pendent jurisdiction is also invoked. Personal jurisdiction is proper as all Defendant have the same principal place of business in Orlando, Florida.

## PARTIES

6. Plaintiff Brian A. Wilkins ("Wilkins" or "Plaintiff") is a natural person and resident of multiple states, but mainly Arizona and Iowa. He resided in Iowa at all times relevant in this case.

7. RCI, LLC. ("RCI" or "Defendant")(FEI/EIN 22-3530212) is a Delaware limited liability company with a principal place of business at 6277 Sea Harbor Drive; Orlando, FL 32821. RCI was served via its registered agent at 1201 Hays Street; Tallahassee, FL 32301-2525. Where applicable, RCI is a "person" pursuant to 47 U.S.C. § 153(39). RCI is a timeshare exchange company with over 4,300 affiliated resorts in 110 countries.

8. RCI, LLC. is operated by WDN, which is a subsidiary of T+L, and does business as "Panorama." **See Exhibit A - RCI.com privacy notice**. Plaintiff may later amend the complaint and add the additional Defendants.

## STATEMENT OF FACTS

9. Plaintiff has cellular phone service with Verizon Wireless. His phone number was changed to 515-371-4013 on or around March 1, 2023. Claimant's phone number was immediately placed on the National Do Not Call Registry. However, he did not receive confirmation of his number being placed on the list until March 24, 2023. **See Attached Exhibit B - DNC list**.

10. Plaintiff received the first RCI call from 317-805-9137 on March 8, 2023. Plaintiff not only uses his phone as an internet hotspot (his only

means of internet connection at home for laptops and other devices), but is also a journalist and constantly on the phone interviewing subjects, doing research, etc. Thus he usually cannot answer phone calls. Instead his interviews and conservations are interrupted by the beeping noises and pauses when the unsolicited calls come in from RCI.

11. Plaintiff had never heard of RCI until March 8, 2023, had no prior or otherwise business relationship with RCI, and never gave RCI written or otherwise permission to call him.

12. RCI called the Plaintiff THREE TIMES on March 9, 2023; THREE TIMES on March 10, 2023; and once on March 13, 2023. Plaintiff was unable to answer any of said calls due to either conducting phone interviews or using his internet hotspot connection, which slows down or disconnects when the phone is answered.

13. The Plaintiff did a reverse search on the phone number 317-805-9137 on March 14, 2023, and learned that it is RCI, LLC. There are numerous complaints on various websites from consumers who, like the Plaintiff, are relentlessly harassed by RCI unsolicited, unlawful telemarketing calls. **See Exhibit C - RCI complaints**.

14. Plaintiff sent a text message to the foregoing RCI phone number on March 14, 2023 at 2:25 a.m. that read in part "Stop calling here." **See Exhibit D - RCI text message stop**.

15. RCI called the Plaintiff again on March 14, 2023 at 4:36 p.m. local time. This time, the Plaintiff answered the call. An automated voice said something to the effect of "your vacation package is ready." The robotic system then placed the Plaintiff on hold, then the call disconnected about a minute later.

16. The Plaintiff immediately called the number back to, again, tell RCI to stop calling. A robot answered and asked the Plaintiff to enter a membership number, which of course the Plaintiff does not have. After 17 seconds of a robot repeating "please enter your membership number" 3-4 times, Plaintiff disconnected the call.

17. RCI called again the next morning, March 15, 2023 at 9:19 a.m. Plaintiff answered the call. After a 5-6 second pause, a human came on the line and said something to the effect of "good morning and how are you today?" Plaintiff responded with several expletives and told the representative that his number is on the National Do Not Call Registry, to remove his phone number from the call system, and never call again. The representative hung up on the Plaintiff.

18. RCI brazenly called again that afternoon, March 15, 2023 at 2:14 p.m.

19. RCI brazenly called THREE TIMES on March 16, 2023, with the Plaintiff answering the call at 5:56 p.m. There was 7 seconds of silence before the call automatically disconnected.

20. Things only got worse. RCI called twice on March 17, 2023; once on March 18, 2023; twice on March 20, 2023; twice on March 21, 2023; and three times on March 22, 2023.

21. RCI called a record FOUR TIMES on March 23, 2023. On this day, the Plaintiff took time out of his day to call RCI again to tell them to stop harassing him. This call was recorded and will be presenting in Court as evidence in due course. Plaintiff, in a clearly shaken and angst-filled voice, practically begged the represented to stop calling, to remove his number from the RCI call list, and reiterated that he is on the National Do Not Call List.

22. RCI called twice on March 24, 2023. There was a break in the calls until April 3, 2023 and April 5, 2023, when RCI called once on each respective day. **See Exhibit F - Verizon Usage Detail** and **Exhibit H - Usage detail (phone screenshots)**.

23. Plaintiff served RCI, LLC., Travel + Leisure Co., and Panorama Travel Solutions, LLC. a Notice of Claim via FedEx, which was received by all

parties on April 6, 2023. The Notice sought to resolve out of court the legal matters related to RCI's blatant violations of the TCPA, on the condition that RCI stops calling the Plaintiff and confirms that his phone number has been removed from their system. **See Exhibit E - Notice of Claim plus FedEx tracking**. RCI ignored the Notice and never contacted the Plaintiff.

24. In perhaps the most brazen acts by the Defendant yet, RCI called the Plaintiff twice on April 7, 2023; once on April 8, 2023; once on April 10, 2023; and once on April 12, 2023. All of said calls in this paragraph came even after RCI was served an official Notice of Claim. **See Exhibit G - April calls**. Further, page 1 of Exhibits F and Exhibit G show in the upper left corner that the Plaintiff bought a new phone in early April 2023. The old phone was destroyed when the Plaintiff, out of complete frustration, snatched it very hard from a table when RCI was calling on March 24, 2023. He did not have a good grip on the phone, and ultimately slung it into a wall, damaging the phone to the point that it was unusable.

25. As of filing this complaint, the Plaintiff has not received further calls. But that may and likely will change based on the patterns herein.

## CLAIM FOR RELIEF

### COUNT I - Violations of the TCPA, 47 U.S.C. § 227 et seq.

26. Paragraphs 1 through 27 are fully incorporated and set forth herein.

27. Defendant called the Plaintiff 40 times from March 8, 2023 to April 12, 2023. In doing so, Defendant violated several provisions of the TCPA.

28. No person or entity may initiate any telephone call...[without] the prior express consent of the called party using...an artificial or prerecorded voice...to any telephone number assigned to a...cellular telephone service." 47 C.F.R. § 64.1200(a)(1)(iii). The Defendant violated this provision on multiple occasions.

29. No person or entity may initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using...an artificial or prerecorded voice to a [cellular phone service] without the prior express written consent of the called party. 47 C.F.R. § 64.1200(a)(2). Defendant violated this provision at least twice.

30. No person or entity may abandon more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30-day period for a single calling campaign. A call is "abandoned" if it

is not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

31. Plaintiff answered the March 16, 2023 call at 5:56 p.m. After 7 seconds of silence, the call automatically terminated. The same thing happened on the March 17, 2023 call, except the call auto-terminated after 3 seconds of silence. These two calls were 2 out of 38 calls in the 30-day stretch from March 8, 2023 to April 8, 2023 - or 5.2% of said calls in that stretch. Further, RCI did not identify itself as a company, provide an opt-out message, disclose that these were telemarketing calls, etc. Plaintiff did not learn that the company initiating the calls was RCI until he did the reverse Internet phone number search on March 14, 2023.

32. Whenever a live sales representative is not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, the telemarketer or the seller must provide a prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and states the name of the business, entity, or individual on whose behalf the call was placed, and a telephone number for such business, entity, or individual that permits the called person to make a do-not-call request during regular business hours for the duration of the telemarketing campaign.

47 C.F.R. § 64.1200(a)(7)(i)(A). Defendant violated the foregoing provision, as outlined in Paragraphs 30-32.

33. None of the calls that the Plaintiff answered provided an automated or otherwise means of opting out of further calls.

34. No person or entity shall initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 C.F.R. § 64.1200(c)(2). The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

35. During the recorded March 23, 2023 phone call, Plaintiff asked the representative what RCI's notes and records say about his phone number. The representative stated that there were no notes or records of prior calls. Thus RCI maintains no written procedures, does not train personnel and does not even record or acknowledge when the Plaintiff or anyone else tells them that they are on the National Do Not Call Registry and to stop calling, in violation of 47 C.F.R. § 64.1200(c)(2)(i).

36. Defendant violated the TCPA by initiating or causing to be initiated, 40 unsolicited, automated, telemarketing phone calls to the Plaintiff's phone in 34 days.

37. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of 47 C.F.R. § 64.1200 et seq. may commence a private right to action in the appropriate court. 47 U.S.C. § 227(c)(5).

38. Plaintiff is entitled to statutory damages of $500 per violation, or $20,000 in total statutory damages. 47 U.S.C. § 227(c)(5)(B).

39. However, due to the brazen, blatant, deliberate nature of these violations, particularly after the Plaintiff informed the Defendant at least four times that he is on the National Do Not Call registry, and to stop calling; and the Plaintiff serving a Notice of Claim on said Defendant demanding they stop calling; these violations qualify as willful, wanton, and deliberate. Thus the Plaintiff is entitled to $1,500 per violation, or $60,000 in damages.

## Count II - Violations of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 (2022/23)[1]

---

[1] http://www.leg.state.fl.us/Statutes/index.cfm?App_mode=Display_Statute&URL=0500-0599/0501/Sections/0501.059.html

40. Paragraphs 1 through 41 are fully incorporated and set forth herein.

41. "Doing business in this state" means businesses that conduct telephonic sales calls from a location in Florida. Fla. Stat. § 501.059(1)(e).

42. "Telephone solicitor" means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in Florida, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices. Fla. Stat. § 501.059(1)(i). The Defendant is physically located in Orlando, Florida.

43. The Defendant violated FTSA by "knowingly allow[ing] a telephonic sales call to be made involving an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

44. Clearly some sort of automated system was used to contact the Plaintiff, as a robot or dead silence was on the other end on the occasions the Plaintiff answered the calls. Further, the calls continued and accelerated even when the Plaintiff got in touch with an actual human being and told them to stop calling.

45. Plaintiff, as outlined in previous paragraphs, has never had a business or otherwise relationship with the Defendant, never signed any documents, or authorized in any way the Defendant to call him 40 times in 32 days. The Defendant never secured express written consent from the Plaintiff to call him.

46. Defendant further violated FTSA by continuing to initiate outbound telephone calls to the Plaintiff after he had previously communicated at least four times to the Defendant that he does not wish to receive outbound telephone calls. Fla. Stat. § 501.059(5).

47. A called party (Plaintiff) who is aggrieved by a violation of this section may bring an action to enjoin the Defendant from further harassment with telemarketing calls, and to recover statutory damages of $500 per violation - or $20,000 for the 40 unsolicited telemarketing calls. However, since the Defendant willfully and knowingly violated this section, the Plaintiff is entitled to $1,500 per violation, or $60,000 in damages plus the cost of filing, serving and prosecuting this lawsuit. Fla. Stat. § 501.059(10)(a).

48. The trial judge shall award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours

actually spent on the case as sworn to in an affidavit. Fla. Stat. § 501.059(11)(a)(c).

49. The TCPA does not preempt FTSA, and the Plaintiff is entitled to statutory damages under both statutes. 47 U.S.C. § 227(f)(1)(B).

## PRAYER FOR RELIEF

Senator Hollings called autodialers "an outrageous invasion" of people's homes. "The individual's right to be left alone plainly outweighs the rights of any intruder," he said[2]. The Defendant brazenly continued harassing the Plaintiff, to the tune of 40 calls in 32 days, sometimes up to four calls per day, even after being told numerous times the laws of the land, and to cease and desist their invasive telemarketing campaigns.

**WHEREFORE**, the Plaintiff prays this Honorable Court grant the following relief:

a) reward the plaintiff statutory damages of $60,000 for the Defendant's brazen, wanton, and willful violations of the TCPA;

b) reward the Plaintiff statutory damages of $60,000 for the Defendant's brazen, wanton and willful violations of the FTSA;

c) reward the Plaintiff all costs related to researching, writing, filing and prosecuting this case;

---

[2] https://www.nytimes.com/1991/10/30/business/curbing-the-telephone-robots.html

d) an order declaring that the Defendant, as a Florida-based company making nationwide unsolicited telemarketing calls, is in violation of the FTSA;

e) all other such reliefs the Court deems is necessary.

ON THIS ___4th___ DAY OF MAY, 2023

*Brian A. Wilkins*
Brian A. Wilkins
2800 University Avenue #420-296
West Des Moines, IA 50266
702-218-3225
brian@contentcoup.com

# EXHIBITS LIST

Exhibit A - RCI.com privacy notice

Exhibit B - DNC list

Exhibit C - RCI complaints

Exhibit D - RCI text message stop

Exhibit E - Notice of Claim plus FedEx tracking

Exhibit F - Verizon Usage Detail

Exhibit G - April calls

Exhibit H - Usage detail